WALLACE, JUDGE:
Audrey P. Tittle, Administrator of the Estate of Steven B. Parcell, filed this claim against the respondent for $250,000.00 *147 as the result of an accident in which Steven B. Parcell lost his life.
On the morning of February 22, 1978, Steven B. Parcell was driving his 1976 Mercury automobile westerly on an elevated portion of Interstate 64 in Charleston, West Virginia. The weather was cold and snowy. At a point near the Court Street ramp, the Parcell vehicle crossed the westbound lane, struck the median barrier or parapet on the left-hand side, went over the side, and crashed to the ground below. Mr. Parcell was killed. The decedent was a young man of twenty-six years, unmarried, who lived alone. Formerly, he had made his home with his mother, who had been separated from her husband for eight or nine years. Mr. Parcell had been an employee of the post office at Belle, West Virginia.
The claimant alleges that the respondent was negligent in its failure to remove the accumulation of snow next to the parapet, which formed a ramp over which the decedent’s vehicle left the highway.
A witness for the claimant, Robert Goddard, testified that he was proceeding in the eastbound lane of the interstate at the time of the accident, that he saw the decedent’s vehicle in the westbound lane about two blocks before it left the highway, and that it was at an angle pointed toward the eastbound lane. He stated:
“That’s what called it to my attention first because of him being in an angle in the highway and he, evidently, was traveling on the right lane headed west and, like I say, when noticed him, he was at an angle, with his nose pointed towards the — it would be towards his left and seemed to be — there was a white vehicle. I don’t know whether it was white or cream colored or what. It was a light vehicle — was going — was stopped. I mean it was completely still. His bumper was towards the retaining wall at the break of the Court Street entrance. It was pointed out into the middle of the highway and, evidently, I mean it looked like it may have aimed to miss this vehicle setting in this peculiar situation, see, and his vehicle never recovered. .. .
*148 He traveled across the left lane striking the retaining wall at the angle, I’d say, his left front — left front part of his vehicle where he hit the retaining wall first, you know, rode up this snow that was piled against the retaining wall or something and then it got up on top of the retaining wall and it sort of nosed down slightly, rolled up on its side and then that was the last I seen of it.”
Mr. Goodard further testified that the vehicle struck the wall at an angle of about 45 degrees, that he couldn’t estimate its speed, and that he did not know the condition of the road in the westbound lane.
Sergeant David Mickel of the Accident Investigation Bureau of the Charleston Police arrived at the accident scene at about 8:30 a.m. He took photographs of the automobile tracks, made measurements of the markings made by the vehicle on the parapet, and went below the interstate and measured the distances the vehicle travelled after it fell from the wall. Sergeant Mickel testified that, according to his estimate, the automobile struck the parapet at an angle of 65-75 degrees; that it rode along the top of the parapet 69 feet, 5 inches; and that it struck the face of the outside wall of the eastbound lane and then fell between the east and westbound elevated sections of the roadway. The vehicle continued its forward motion for 30 feet as it fell 29 feet to the ground, where it skidded 32 feet, 4 inches on its top. The sergeant further testified that two westbound travel lanes were being used, snow and ice were built up on the sides, and traffic was moderate. He stated:
“The highway was in a hazardous condition to the point that you could not maintain 50 miles per hour which is the speed limit.”
He further stated that he did not believe that the road could have been negotiated safely at a speed in excess of 40 miles per hour under those conditions.
Garland Steele, Chief Engineer of Operations for the respondent, testified that it was the practice of the State, during the early stages of interstate-highway snow removal, to clear the travel lanes first and to store snow on adjacent shoulders prior to its removal.
*149 The record establishes that the parapet was 32 inches high and lYz feet wide at the top. Photographs introduced into evidence show the accumulation of snow beside the parapet over which the decedent’s vehicle travelled. Although no measurements were given at the hearing, the height of the snow against the parapet appears, from the photographs, to be 15 to 20 inches below the top of the parapet, and does not seem to be a solid mass.
Dr. Carl Rotter, Professor of Physics from West Virginia University, having been given all of the photographic exhibits and the factual situation of the accident, was asked to use principles of physics in giving his opinion of the speed of the decedent’s automobile when it struck the median barrier. Dr. Rotter testified that, using the factual situation as outlined to him, and assuming that the vehicle struck the barrier at an angle of 45 degrees, the velocity of the automobile toward the parapet would have been 73 feet per second, which translates to a speed of 50 miles per hour. He further testified:
• -if you change the angle to 75 degrees, (as testified to by Sgt. Mickel), the speed would have been 140 miles per hour and I think that is extravagant. So I don’t think 75 degrees is in any way cprrect in analysis of the motion of the car.” (Parenthetical statement supplied.)
As sympathetic as the Court may be regarding the loss of life resulting from the accident, the Court finds, from the record, that the claimant has failed to establish actionable negligence on the part of the respondent that caused the accident. On the contrary, the physical facts of this claim create an inescapable inference that the decedent was travelling at an excessive rate of speed, taking into consideration the condition of the highway. To operate a motor vehicle in disregard of the visible condition of the roadway constituted assumption of a known risk. See Swartzmiller v. Department of Highways, 10 Ct.Cl. 29 (1973). A person operating a vehicle on a public highway must consider all existing conditions with regard to his own safety and the safety of others. West Virginia Code, Chapter 17C, Article 6, Section 1 (a), provides:
“No person shall drive a vehicle on a highway at a speed *150 greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards, then existing....
(3) (c) The driver of every vehicle shall, consistent with the requirements of subsection (a), drive at an appropriate reduced speed. . .when special hazard exists. . .by reason of weather or highway conditions.”
This Court has many times held that the State is not a guarantor of the safety of travelers on its highways, and that the user of the highways travels at his own risk. Adkins v. Sims, 130 W.Va. 645, 46 S.E.2nd 81 (1947); Parsons v. State Road Commission, 8 Ct.Cl. 35 (1969). For the reasons herein set out, the Court disallows this claim.
Claim disallowed.